A. Barry Cappello (CSB No. 037835)
Leila J. Noël (CSB No. 114307)
Lawrence J. Conlan (CSB No. 221350)
**CAPPELLO & NOËL LLP**
831 State Street
Santa Barbara, CA 93101-3227
Telephone: (805)564-2444
Facsimile: (805)965-5950

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| STEPHEN E. SAMUELIAN and KRISTIN KAY SAMUELIAN, as Trustees of the Kristin and Stephen Samuelian Family Trust established 8/25/2017, and SK5-KELLER LEGACY, LLC, a Utah LLC, individually and on behalf of others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>AMPLIFY ENERGY CORP., a Delaware corporation, BETA OPERATING COMPANY LLC, dba Beta Offshore, a Delaware LLC, and JOHN DOES 1 through 10,<br><br>      Defendants. | Case No. 8:21-cv-1658<br><br>__CLASS ACTION__<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# I.    INTRODUCTION

Plaintiffs STEPHEN E. SAMUELIAN and KRISTIN KAY SAMUELIAN, as Trustees of the Kristin and Stephen Samuelian Family Trust established 8/25/2017, and SK5-KELLER LEGACY, LLC, a Utah LLC (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following against Defendants AMPLIFY ENERGY CORP. and its subsidiary, BETA OPERATING COMPANY LLC dba Beta Offshore, and John Does 1 through 10 (collectively "Defendants"), based where applicable on personal knowledge, information and belief, and the investigation and research of counsel.

# II.    NATURE OF THE ACTION

1.    In the morning of October 2, 2021, and possibly beginning the day before, an underwater oil pipeline about 5 miles off the coast of Huntington Beach, California ruptured, spewing thousands of barrels of crude oil into the Pacific Ocean.  The rupture created a toxic, 13-square-mile slick off the shore of Huntington Beach, which has since spread and deposited oil on beaches and into coastal wetlands rich in biodiversity.

2.    The rupture has highlighted California's aging offshore oil and gas infrastructure.  The pipeline (the "San Pedro Bay Pipeline" or the "Pipeline") is owned and/or operated by Defendant Amplify Energy and its subsidiary, Defendant Beta Operating Offshore, dba Beta Offshore (collectively, the "Pipeline Defendants").  The Pipeline rupture sent tens of thousands of gallons of toxic crude oil flowing over some of Southern California's most beautiful beaches and waters.

3.    Before the Pipeline Defendants shut off the Pipeline, it had discharged crude oil in an amount initially estimated to be in excess of one hundred thousand gallons. Oil coated the shoreline and clung to rocks, sand, wild animals, and marine life.  The Spill has polluted beaches and damaged coastal private properties.

4.    The beachfront properties along the Southern Coast of California, like coastal properties throughout the state, are highly valuable. The property owners

CLASS ACTION COMPLAINT

1  enjoy the unspoiled sand and water, direct access to fishing, surfing, kayaking, and

2  other activities.

3      5.      This depressingly familiar story could have been averted had the

4  Pipeline Defendants: (a) adequately maintained the Pipeline, making it less

5  susceptible to corrosion and rupture, and (b) been properly prepared and promptly

6  acted when the spill began, including when the alarm first indicated that there was a

7  problem.

8      6.      Regular maintenance of pipelines is a crucial step that owners of

9  pipelines must take in order to avoid exactly the disaster that occurred with the

10 Pipeline.

11     7.      Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure

12 23 on their own behalves and as representatives of others similarly situated to

13 recover significant economic losses they have incurred and will continue to incur

14 because of Defendants' oil spill.

15                    **III.   PARTIES**

16     8.      Plaintiffs Stephen E. Samuelian and Kristin Kay Samuelian, as

17 Trustees of THE KRISTIN AND STEPHEN SAMUELIAN FAMILY TRUST       ,

18 established 8/25/2017, own 31755 Coast Highway #202, Laguna Beach, CA,

19 92651, and are citizens of Orange County, California.

20     9.      Plaintiff SK5-Keller Legacy, LLC is a Utah Limited Liability

21 Company, which owns property located at 70 N. La Senda Drive, Laguna Beach,

22 CA 92651, and is a citizen of Orange County, California.

23     10.     Defendant Amplify Energy Corp. ("Amplify"), is a Delaware

24 corporation with its headquarters and principal place of business in Houston, Texas.

25 Pursuant to 28 U.S.C. 1332(c)(1), Defendant Amplify is therefore a citizen of

26 Delaware and Texas.

27     11.     Defendant Beta Operating Company, LLC, dba Beta Offshore

28 ("Beta") is a Delaware LLC, with its headquarters and principal place of business in

CLASS ACTION COMPLAINT

Houston, Texas.  It is a subsidiary of Amplify.  Under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(10), Defendant Amplify is therefore a citizen of Delaware and Texas.

12.     On information and belief, Defendants John Does 1 through 10, are corporations or partnerships, the names and addresses of which are currently unknown.

13.     Defendants own and operate the Pipeline, a crude oil pipeline system of approximately 17 miles long, beginning offshore at Platform Elly and ending onshore at the Beta Pump Station.

### IV.     JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to CAFA, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one defendant; there are more than 100 class members; and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

15.     This Court has personal jurisdiction over Defendants because they are registered to conduct business in California, and have sufficient minimum contacts with California.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and because Defendants have caused harm to Class members residing in this District.

### V.     FACTS

**A.     <u>The Orange County Coast</u>**

17.     The Orange County Coast is a special place with blue water, iconic piers, famous surf breaks, and beautiful beaches.

18.     Much of the economic life in this region revolves around the coastal areas and beaches.  Thousands of people in Orange County depend on the ocean and beaches for work and play.  Beachfront property owners enjoy direct access to

blue waters and magnificent coastline, and residents walk the beaches, fish from the shores, swim, surf, kayak and use and enjoy their properties.

19.     Now contamination by Defendants' oil spill has undermined the health of the environment, and the coastal beachfront real property.

20.     Threats to the Southern California environment and economy from oil development are not new. In 1969, a blowout at Union Oil's off-shore drill rig sent millions of gallons of oil into the waters and onto the beaches of Santa Barbara County. The blowout killed thousands of birds, dolphins, fish, and other marine life, and swamped beaches along the coast with oil. The litigation that followed effectively led to the birth of the environmental movement and legislation to protect the environment and the public from oil and gas operations on and off shore.

21.     Six years ago, the Plains oil pipeline spill near Santa Barbara decimated fishing areas and oil washed up on beaches from Santa Barbara to Orange County.  While state and local governments and some companies have taken significant steps to make the production and transportation of crude oil safer and more reliable, Defendants do not have a respectable track record.

**B.     The Failure of Defendants' Pipeline**

22.     The San Pedro Bay Pipeline is approximately 17 miles in length, beginning offshore at Platform Elly and traveling onshore to the Beta Pump Station in the City of Long Beach, California. The offshore portion of the Pipeline is approximately 15 miles in length and the onshore portion is approximately 2 miles in length.

23.     The San Pedro Bay Pipeline traverses a High Consequence Area (HCA) as defined in 49 C.F.R. § 195.450 and an ecologically unusually sensitive area as defined in § 195.6.

24.     The Pipeline was installed in 1980. It has a 16-inch nominal diameter with 0.500-inch wall thickness for the offshore portion and 0.375-inch wall thickness for the onshore portion. The Pipeline consists of X-42 grade pipe, and has

a double-submerged arc-welded longitudinal seam. The pipe coating type is concrete. The onshore portion is cathodically-protected and the offshore portion has sacrificial anodes on the pipeline.

25.     Prior to the rupture, the San Pedro Bay Pipeline was reported to be operating at approximately 300-400 psig. The maximum operating pressure (MOP) of the San Pedro Bay Pipeline is 1152 psig.

26.     Reports about a possible oil spill off the coast of Huntington Beach were left on a federal hotline on Friday night, October 1, 2021, nearly 16 hours before the U.S. Coast Guard and local officials publicly confirmed the spill's existence, according to government records.[1]

27.     At approximately 02:30 PDT on October 2, 2021, Defendants' control room personnel received a low-pressure alarm on the San Pedro Bay Pipeline, indicating a possible failure.

28.     Despite the presence of this alarm, it was over three hours before Defendants reported, at approximately 06:01 PDT on October 2, 2021, that the San Pedro Bay Pipeline had been shut down.

29.     At 09:07 PDT on October 2, 2021, more than six hours after the initial alarm, and three hours after Defendants shut down the Pipeline, Defendants reported the incident to the National Response Center ("NRC"), indicating that there was a release of crude oil in the vicinity of its pipeline near Platform Elly. The U.S. Coast Guard subsequently submitted NRC reports reporting the presence of oiled marine life and dead fish, and reporting that the failure may have been caused by a crack in the Pipeline.

30.     The exact failure location is currently unknown, but preliminary reports indicate the failure location is approximately 5 miles offshore at a depth of

---

[1]
https://www.ocregister.com/2021/10/04/first-reports-of-oil-slick-off-huntington-beach-came-day-before-public-was-notified/

CLASS ACTION COMPLAINT

approximately 98 feet.  On October 6, 2021, Defendants' CEO, Martyn Willsher stated that a 4,000 ft section of the pipeline appears to have a 13-inch split along the length of the pipe.[2]

31.     Various state and federal agencies responded to the scene, including the U.S. Coast Guard, BSEE, NTSB, PHMSA, CDFW, and local law enforcement. Private oil spill response organizations under contract with Defendants also responded to the incident.

32.     While the precise timeline of events is currently under investigation, it appears that Defendants did not promptly act to respond to signs of the Pipeline's failure or notify relevant government agencies. That apparently delayed and inadequate response runs contrary to Defendants' oil spill response plan.

33.     Despite the efforts of volunteers and professional responders, the spill affected numerous Marine Protected Areas as well as beaches from Huntington Beach and south.

34.     As the oil spread, so did its terrible consequences. Fish, birds, and marine mammals died after being covered in oil or exposed to the oil's toxic compounds. Tar balls and oil sheen from Defendants' oil spill fouled beaches far to the south of Huntington Beach.

35.     In Southern California, these environmental impacts translate to profound economic impacts. The spill's pollution of coastal private properties impairs the ability of property owners to use and enjoy their land.

36.     Finally, the oil spill presented a serious risk to human life. Residents are being warned to avoid all areas affected by the spill, due to risk of fumes.

37.     Long term, the impacts may be as-yet-unknown, but they are no less certain. Even with the best spill response, toxic oil will remain in the environment

---

[2] https://losangeles.cbslocal.com/2021/10/06/huntington-beach-oil-spill-section-pipeline-damaged-moved-100-feet-along-ocean-floor/

CLASS ACTION COMPLAINT

for a long time, continuing to harm the environment and pollution of beaches.

**C.**     **Defendants Have a History of Reckless Compliance Violations.**

38.     While this spill is a disaster, it is not an accident. Defendants wantonly disregarded the health and safety of the public and environment by operating the Pipeline when they knew it did not have proper safety systems in place.

39.     Between 2013 and 2014, federal regulators fined Beta Operating a total of $85,000 for violations that, in two instances, led to injuries of workers. Since 2010, Beta Operating has also been issued 125 noncompliance violations by federal inspectors, according to a database maintained by the federal Bureau of Safety and Environmental Enforcement, which is responsible for inspecting offshore oil platforms.[3]

40.     Defendants have profited and continue to profit from their failure to comply with safety requirements and guidelines, and their decision not to maintain, repair and/or replace the Pipeline, or keep it safe from harms way, demonstrates Defendants' willingness to prioritize profits of over public safety.

41.     Defendants knew of the extremely high risk of catastrophic injury inherent in the transportation of oil through a pipeline. Defendants avoided taking action to protect Plaintiffs and the Class from apparent risks the Pipeline presented. Defendants demonstrated a callous and reckless disregard for human life, health, and safety by operating the Pipeline without proper maintenance and safety equipment.

42.     This disregard for the rights of others and the rule of law is part of a pattern and practice that Defendants have demonstrated. Defendants acted with such indifference to the consequences of their misconduct, with such recklessness, and as part of a well-established pattern, as to be willful, malicious, and oppressive,

---

[3] https://www.data.bsee.gov/Company/INCs/Default.aspx

CLASS ACTION COMPLAINT

1    and in disregard of the rights of the Plaintiffs and the Class, thereby meriting an

2    award of punitive and/or exemplary damages against Defendants.

3         43.    In short, Defendants operated a pipeline that failed. The communities

4    through which it transports oil, and most particularly the beachfront property

5    owners and renters, suffer the consequences.

6         44.    This lawsuit therefore seeks to compensate the victims of the spill and

7    to ensure that Defendants are prevented from causing additional damage to the state

8    economy, the environment, and real property residents in the future.

9                        **VI.   PLAINTIFFS' FACTS**

10        45.    Plaintiffs' properties have immediate beachfront access to the ocean,

11   including areas to swim, surf, fish, and kayak directly accessible from the property.

12   Before Defendants' oil spill, the Plaintiffs were able to enjoy the pristine natural

13   environment in the area, and the value of the property reflected its shoreline

14   location, direct access to the ocean, and natural beauty and quietude.

15        46.    The oil spill caused by Defendants caused crude oil to wash up on

16   beaches from the ocean, including on the beaches near these plaintiffs' beachfront

17   property. The family members' ability to use and enjoy it has been impaired.

18        47.    These Plaintiffs not only suffer present injury, but also suffer the

19   concrete risk of imminent, additional injury.

20                 **VII.   CLASS ACTION ALLEGATIONS**

21        48.    Plaintiffs bring claims pursuant to Federal Rule of Civil Procedure 23

22   on behalf of classes of similarly situated persons, which they initially propose be

23   defined as follows:

24        All beachfront properties and properties with a private easement

25        to a beach (collectively, "Included Properties") where oil from

26        the San Pedro Bay Pipeline washed up following the oil spill

27        reported on October 2, 2021.

28

CLASS ACTION COMPLAINT

49.     Plaintiffs reserve the right to propose subclasses of Plaintiffs in connection with their Motion for Class Certification, and as determined by the Court in its discretion.

50.     The Class members are ascertainable and have a well-defined community of interest among their members.

51.     **Ascertainability**: The number and identity of class members can be easily ascertained. Because the oil spill was a distinct catastrophic event, the class members—who consist of beachfront property owners and lessees who suffered property damage and/or economic harm—will not have difficulty discerning these injuries, or their cause. In October, 2021, as a result of the Huntington Beach oil spill, oil from the Pipeline washed up in front of and onto their properties, damaged their beaches, and continues to do so.  Those whose properties were affected by the spill and its lingering effects are aware of these facts and the resulting costs.

52.     **Numerosity**: The members of the Class are so numerous that joinder of all members is impractical. The proposed Class likely contains hundreds if not thousands of members.

53.     **Commonality**: There are common questions of law and fact that predominate over any questions affecting only individual members of the Class.

54.     For Plaintiffs and the Class, the common legal and factual questions include, but are not limited to, the following:

        (a) Whether Defendants acted negligently, recklessly, wantonly, and/or unlawfully to cause the spill;

        (b) Whether Defendants installed and maintained adequate safety measures and systems on the Pipeline and in its systems of command and control to prevent the spill;

        (c) Whether Defendants conducted adequate supervision that could have prevented the spill or reduced its scale;

CLASS ACTION COMPLAINT

(d) Whether Defendants engaged in unconscionable, deceptive, and/or unreasonable business practices and conduct;

(e) Whether Defendants knowingly, intentionally, or negligently concealed, suppressed, or omitted material facts concerning the safety of the Pipeline from the public;

(f) Whether Defendants knowingly, intentionally, or negligently concealed, suppressed, omitted, or delayed relaying material facts regarding the spill to local, state, and federal agencies, thereby slowing the response, and/or increasing the damages to Plaintiffs and members of the Class;

(g) Whether Plaintiffs and the Class suffered injury by virtue of Defendants' negligence, recklessness, carelessness, and/or unconscionable and/or deceptive business practices; and

(h) Whether Defendants are strictly liable to Plaintiffs and the Class, by virtue of state and/or federal laws.

55.     **Typicality**: The representative Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all the members of the Class have been injured by the same wrongful acts and omissions of Defendants. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

56.     **Adequacy of Representation**: Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class, and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiffs nor their attorneys have any interests contrary to or in conflict with the Class.

57.     **Rule 23(b)(3)**: In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions

CLASS ACTION COMPLAINT

1  affecting only individual Class members and a class action is superior to individual

2  litigation. The amount of damages available to individual plaintiffs is insufficient to

3  make litigation addressing Defendants' conduct economically feasible in the

4  absence of the class action procedure. Individualized litigation also presents a

5  potential for inconsistent or contradictory judgments, and increases the delay and

6  expense to all parties and the court system presented by the legal and factual issues

7  of the case. By contrast, the class action device presents far fewer case management

8  difficulties and provides the benefits of a single adjudication, economy of scale, and

9  comprehensive supervision by a single court.

10      58.    **Rule 23(b)(2)**: Plaintiffs also satisfy the requirements for maintaining

11  a class action under Rule 23(b)(2). Defendants have acted or refused to act on

12  grounds that apply generally to the proposed Class, making final declaratory or

13  injunctive relief appropriate with respect to the proposed Class as a whole.

14      59.    **Rule 23(c)(4)**: Plaintiffs also satisfy the requirements for maintaining

15  a class action under Rule 23(c)(4). The claims of Class members are composed of

16  particular issues that are common to all Class members and capable of class wide

17  resolution that will significantly advance the litigation.

18  **VIII.  CAUSES OF ACTION**

19  <u>**First Claim for Relief**</u>
**Strict Liability under Lempert-Keene-Seastrand Oil Spill Prevention and**
20  **Response Act, Government Code Section 8670, *et seq*.**

21      60.    Plaintiffs incorporate by reference each and every prior and

22  subsequent allegation of this Complaint as if fully restated here.

23      61.    The Lempert-Keene-Seastrand Oil Spill Prevention and Response Act

24  ("the Act") provides that "[a]ny responsible party, as defined in Section 8670.3,

25  shall be absolutely liable without regard to fault for any damages incurred by any

26  injured party which arise out of, or are caused by, the discharge or leaking of oil

27  into or onto marine waters." Cal. Gov't Code Section 8670.56.5(a).

28

62.     The Pacific Ocean and the waters off the Huntington Beach Coast are "marine waters" as defined in Section 8670.03(i).

63.     Defendants are "responsible part[ies]," which includes "the owner or transporter of oil or a person or entity accepting responsibility for the oil."

64.     The oil transported through the Pipeline is "oil" within the meaning of the Act, which defines "oil" as "any kind of petroleum, liquid hydrocarbon, or petroleum products or any fraction or residues therefrom," including "crude oil."

65.     As the responsible party for the oil transported through Line 901, Defendants are absolutely liable under the Lempert-Keene-Seastrand Act.

66.     On or before October 2, 2021, Defendants discharged or leaked crude oil into the Pacific Ocean, and are therefore absolutely liable without regard to fault for all damages that Plaintiffs and the Class sustained or will sustain. That discharge was not permitted by state or federal law.

67.     The Act entitles a plaintiff to recover a wide variety of damages, including, but not limited to, loss of subsistence use of natural resources; injury to, or economic losses resulting from destruction of or injury to, real or personal property, which shall be recoverable by any claimant who has an ownership or leasehold interest in property; loss of taxes, royalties, rents, or net profit shares caused by the injury, destruction, loss, or impairment of use of real property, personal property, or natural resources; and loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources. *See generally* Cal. Gov't Code Section 8670.56.5(h).

68.     The contamination illegally caused by the discharge of crude oil into or upon area beaches and the Pacific Ocean and caused injury to and destruction of real or personal property, as well as impairment of earning capacity of Plaintiffs and the Class.

69.     Plaintiffs have ownership or leasehold interests in real or personal property damaged by Defendants' oil spill; Plaintiffs' livelihoods and earning

CLASS ACTION COMPLAINT

capacity depend directly on the integrity of the pipeline not rupturing and damaging real and personal property and the natural resources in and around the Pacific Ocean, and along the California coastline; and/or Defendants' damage to real property, personal property, and natural resources has caused Plaintiffs a loss of taxes, royalties, rents, or net profit; or all of the above, Defendants are liable to Plaintiffs and the Class under the Act.

70.     The injury, destruction, loss, and/or impairment of usability of these natural resources has caused Plaintiffs and the Class to lose profits, and will cause future losses of profits and/or impair their earning capacities.

71.     The lasting effects of contamination related to the discharge of toxic crude oil into the Pacific Ocean and coastal areas, which Plaintiffs and the Class rely on, requires that Plaintiffs and the Class continue future monitoring and testing activities in order to ensure that the toxic oil from the spill does not further contaminate and degrade Plaintiffs' property, and that their earning capacity is not impaired.

## Second Claim for Relief
## Strict Liability for Ultrahazardous Activities

72.     Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

73.     At all times herein, Defendants were the owners and operators of the Pipeline.

74.     At all times relevant to this action, Defendants had supervision, custody, and control of the Pipeline.

75.     At all times herein, Defendants were under a continuing duty to protect the Plaintiffs and the Class from the harm caused by the Pipeline.

76.     Defendants were engaged in ultrahazardous activities by transporting flammable, hazardous, and toxic oil through the Pipeline.

CLASS ACTION COMPLAINT

77.     Plaintiffs and the Class have suffered harm from the discharge of toxic oil from the Pipeline and immediate, direct and negative impact of the spill.

78.     The injuries sustained by Plaintiffs and the Class as a result of the oil spill were the direct and proximate result of Defendants' activities.

79.     The harm to Plaintiffs and the Class was and is the kind of harm that would be reasonably anticipated as a result of the risks created by transporting flammable, hazardous, and toxic oil in a Pipeline which was not properly or safely maintained in close proximity to the Pacific Ocean.

80.     Defendants' operation of the Pipeline and its failure was a substantial factor in causing the harms suffered by Plaintiffs and the Class.

81.     Due to Defendants' strict liability, Plaintiffs and Class members are entitled to recover actual damages.

82.     The acts and omissions of Defendants were conducted with malice, fraud, and/or oppression as set out in this Complaint.

## Third Claim for Relief
### Negligence

83.     Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

84.     Defendants owed a duty to Plaintiffs and the Class to exercise reasonable and ordinary care. That duty arose generally as well as from, among other things, federal, state, and local laws, ordinances and regulations that require Defendants to operate a pipeline in a manner that does not damage public health and safety, or pose a threat to real property.  These laws include, but are not limited to, the Lempert-Keene Act, Government Code Section 8670, *et seq*., the Porter-Cologne Act, Water Code Sections 13000, *et seq*., Cal. Fish & Game Code Section 5650, *et seq*., the Federal Clean Water Act, 33 U.S.C. § 1251 *et seq*., and state and federal spill response and notification laws.

CLASS ACTION COMPLAINT

85.     Defendants breached their duty to Plaintiffs and the Class by, among other things, failing to install reasonable safety equipment to prevent a spill, failing to detect and repair corrosion, and failing to promptly respond to and contain the spill.

86.     Defendants, in the exercise of reasonable care, should have known that the Pipeline could rupture or otherwise fail, and spill significant amounts of oil, and cause damage to beachfront real property.

87.     In addition, Defendants' violations of the above-cited statutes, ordinances, and/or regulations resulted in precisely the harm to Plaintiffs that the laws listed above were designed to prevent, and Plaintiffs and the Class are members of the class of persons for whose protection those laws were adopted.

88.     At all times herein mentioned, Defendants negligently, wantonly, carelessly and/or recklessly maintained and operated the Pipeline.

89.     As a direct and proximate result of Defendants' negligence, Plaintiffs and the Class have sustained damages. Those damages take primarily two forms: short-term and long-term.  As a direct and legal cause of the Defendants' wrongful acts and omissions herein above set forth, Plaintiffs and the Class have suffered and will continue to suffer real property damage, economic harm, injury to earning capacity, and losses.

90.     The short-term damages include loss of use and enjoyment of beachfront and oceanfront real property because of oil polluting the beaches and waters, as well as potential lost rental income and profits from vacationers and tourists visiting Southern California.

91.     The long-term damages include physical injury to property in which Plaintiffs have a direct ownership interest.

92.     The oil spill's long-term damages may also diminish the values of oceanfront and beachfront real properties along the coast that have been polluted by Defendants' oil.

CLASS ACTION COMPLAINT

93.     The acts and omissions of Defendants, and each of them, were conducted with malice, fraud, and/or oppression as described in this Complaint.

**Fourth Claim for Relief**
**Violations of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

94.     Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

95.     Defendants have engaged in and continue to engage in unfair competition in violation of California's Unfair Competition Law ("UCL").

96.     Defendants' conduct constitutes "fraudulent" business practices within the meaning of UCL in that members of the public have been harmed.

97.     Defendants' conduct amounts to "unfair" business practices as UCL forbids all wrongful business activities in any context in which they appear. Moreover, as described above, Defendants' practices offend established public policies, are immoral, unethical, oppressive, and unscrupulous. The impact of Defendants' practices is in no way mitigated by any justifications, reason, or motives. Defendants' conduct has no utility when compared to the harm done to Plaintiffs and members of the Class.

98.     Defendants' conduct is "unlawful" because it violated laws including but not limited to the Lempert-Keene Act, Government Code Section 8670, *et seq.*, the Porter-Cologne Act, Water Code Sections 13000, *et seq.*, and Cal. Fish & Game Code Section 5650, *et seq.*, the Oil Pollution Act, and local, state, and federal spill notification laws, and the oil spill response plans required by federal, state, and local laws. Federal, state, and local officials have announced investigations into Defendants' conduct related to the spill, so it is reasonable to infer that Defendants may have violated other laws.

99.     As a direct and proximate result of Defendants' unfair, fraudulent, and unlawful methods of competition and unfair and deceptive acts or practices, Plaintiffs and the Class have sustained injury in fact and have lost money or

CLASS ACTION COMPLAINT

property, including but not limited to a diminishment in assets and value of assets, for which they seek injunctive relief.  The relief sought includes, but is not limited to, an order requiring Defendants to do the following:  restore the area real properties and beaches impacted by the spill; repair short and long term damages to coastal properties; repair reputational damage done to coastal property values; and prevent Defendants from operating the Pipeline without adequate safety mechanisms and ongoing monitoring, to ensure that no future spill occurs.

100.    Plaintiffs and the Class have no adequate remedy at law for the injuries that will result from failure of the Defendants to safely replace and/or repair, operate, and maintain the Pipeline and it could be impossible for Plaintiffs and the Class to determine the precise amount of damages they will suffer if Defendants' conduct is not restrained and Plaintiffs are forced to institute a multiplicity of suits to obtain adequate compensation for injuries and harm to the Class.

101.    The acts and omissions of Defendants were done with malice, fraud, and/or oppression as described in this Complaint.

### Fifth Claim for Relief
### Public Nuisance

102.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

103.    Defendants have created a condition that is harmful to health and interferes with the comfortable enjoyment of life and property by discharging hundreds of thousands of gallons of crude oil into the Pacific Ocean and onto the California coastline.

104.    That nuisance affects a substantial number of individuals similarly situated to the Plaintiffs, such as citizens of and visitors to Southern California beaches, and real property owners and lessees.

CLASS ACTION COMPLAINT

105.     Defendants' oil spill is a condition which would reasonably annoy and disturb an ordinary person, as shown by, for example, the health impacts warned of by the county, the community outrage in response to the spill, and the nationwide interest in the spill's impacts on the Southern California Coast.

106.     The seriousness and gravity of that harm outweighs the social utility of Defendants' conduct. There is little or no social utility associated with releasing tens of thousands of gallons of oil into the unique ecological setting of Southern California.

107.     Plaintiffs and the Class suffered harm and injury to their economic livelihood, which they did not consent to and which is different from the type of harm suffered by the general public.

108.     The above acts and omissions also created a public nuisance *vis-à-vis* the Plaintiffs and the Class, interfering with the property rights of Plaintiffs and the Class, and rights incidental to those property rights.

109.     The acts and omissions of Defendants described herein were also in violation of various California state laws including but not limited to the Lempert-Keene Act, Government Code Section 8670, *et seq*., the Porter-Cologne Act, Water Code Sections 13000, *et seq*., and Cal. Fish & Game Code Section 5650, *et seq*., and local laws.

110.     Defendants' violations of those statutes directly and proximately caused, and will cause, injury to the Plaintiffs and the Class of a type which the statutes are intended to prevent. Plaintiffs and the Class are of the class of persons for whose protection these statutes were enacted.

111.     As a direct and legal cause of Defendants' wrongful acts and/or omissions herein above set forth, Plaintiffs and the Class have suffered and will suffer economic harm, injury, and losses.

112.     To remedy the harm caused by Defendants' nuisance, Plaintiffs will seek public injunctive relief, including, but not limited to, an order requiring

1    Defendants to do the following:  restore the area real properties and beaches

2    impacted by the spill; repair short and long term damages to coastal properties;

3    repair reputational damage done to coastal property values; and prevent Defendants

4    from operating the Pipeline without adequate safety mechanisms and ongoing

5    monitoring, to ensure that no future spill occurs.

6        113.    In maintaining the nuisance, which is ongoing, Defendants are acting

7    with full knowledge of the consequences and damage being caused, and the acts

8    and omissions of Defendants, were done with malice, fraud, and/or oppression as

9    described in this Complaint.

10                        **Sixth Claim for Relief**

11      **Negligent Interference With Prospective Economic Advantage**

12       114.    Plaintiffs incorporate by reference each and every prior and

13   subsequent allegation of this Complaint as if fully restated here.

14       115.    Plaintiffs and the Class have existing or prospective economic

15   relationships with citizens of Southern California, visitors to Orange County, and

16   other individuals and organizations doing business in and related to Orange County.

17       116.    These relationships have a reasonably probable likelihood of resulting

18   in future economic benefits or advantages to Plaintiffs and the Class.

19       117.    Defendants knew or should have known of these existing and

20   prospective economic relationships.

21       118.    Defendants owed a duty to Plaintiffs and the Class to avoid negligent

22   or reckless conduct that would interfere with and adversely affect the existing and

23   prospective economic relationships of Plaintiffs and the Class.

24       119.    Defendants breached that duty to Plaintiffs and the Class by, among

25   other things, failing to install and/or maintain reasonable safety equipment to

26   prevent such a spill, failing properly to maintain the pipeline in a safe condition,

27   and failing to promptly respond to and contain the spill.

28

120.    Defendants knew or should have known that, if they failed to act with reasonable care, the existing and prospective economic relationships of Plaintiffs and the Class would be interfered with and disrupted.

121.    Defendants were negligent and failed to act with reasonable care as herein set forth above.

122.    Defendants engaged in wrongful acts and/or omissions as herein set forth above, including but not limited to their violations of federal, state, and local laws that require Defendants to operate the Pipeline in a manner that does not damage public health and safety.

123.    As a direct and proximate result of Defendants wrongful acts and/or omissions, Defendants negligently and recklessly interfered with and disrupted the existing and prospective economic relationships of Plaintiffs and the Class.

124.    As a direct and proximate result of Defendants' wrongful acts and/or omissions, Plaintiffs and the Class have suffered and will suffer economic harm, injury, and losses as herein set forth above.

## Seventh Claim for Relief
### Trespass

125.    Plaintiffs who have a real property interest in water front property bring this on behalf of themselves and all other similarly situated land owners or lessees.  They incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

126.    Defendants discharged a polluting matter beyond the boundary of Plaintiffs' and Class Members' real property in such a manner that, it was reasonably foreseeable that the pollutant would, in due course, invade Plaintiffs' and Class Members' real property and cause harm.

127.    By discharging polluting matter, Defendants entered, invaded, and intruded on the real properties of Plaintiffs and the Class Members without privilege, permission, invitation, or justification.

CLASS ACTION COMPLAINT

128.    Defendants had a duty to use reasonable care not to enter, intrude on, or invade Plaintiffs' and Class Members' real properties.  Defendants also owed a duty to Plaintiffs and members of the Class to exercise reasonable care in the manufacture, maintenance, and operation of the Pipeline.

129.    Defendants had a heightened duty of care to Plaintiffs and the Class because of the great danger associated with transporting oil so near to pristine coastal residential areas and nearby real properties along the Southern California Coast.

130.    Defendants breached the duty they owed to Plaintiffs and members of the Class when they failed to exercise reasonable care in the manufacture, maintenance, and operation of the Pipeline, which conduct resulted in entry, intrusion, or invasion on Plaintiffs' and Class Members' real properties.

131.    Defendants knew or should have known that their conduct would foreseeably result in a disastrous oil spill, causing damage to the real properties and economic interests of persons in the area affected by the spill.

132.    As a direct and proximate result of Defendants' trespass, Plaintiffs and Class Members have suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to, property damage, diminution of value of real estate, loss of income and other economic loss.

133.    Defendants' wanton or reckless conduct, as described herein, entitles Plaintiffs and Class Members to punitive damages.

## Eighth Claim for Relief
### Private Nuisance

134.    Plaintiffs who have a real property interest in water front property bring this claim on behalf of themselves and all other similarly situated land owners or lessees.  They incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

CLASS ACTION COMPLAINT

135.    Defendants' actions and inactions caused, maintained, and/or permitted the contamination alleged in this action by its negligence, intentional or otherwise, actionable acts, and/or omissions.

136.    Defendants created the contamination at issue, which is harmful to both human health and the environment and interferes with Plaintiff's comfortable use and enjoyment of the real property in which she has a possessory interest.

137.    Defendants were, at all relevant times, in sufficient control of the Pipeline to have known of the threatened release of oil and associated hydrocarbons and to have prevented the resulting contamination.  Defendants knew or should have known that their operation of the failed pipeline would have, and did, cause the contamination described herein.

138.    Despite knowledge and forewarning, Defendants failed to take reasonable steps to prevent the failure which resulted in the contamination at issue.

139.    Defendants failed to take reasonable steps to abate the contamination at issue, which continues to spread to previously uncontaminated areas.  The contamination is, however, abatable, and, therefore, it is continuing in nature.  This also confirms that Defendants have knowingly maintained the nuisance, i.e. the contamination at issue.  In the alternative, the contamination and/or resulting diminution in property value is not reasonably abatable and permanent in nature.

140.    Plaintiffs did not consent to the ongoing and/or permanent damage to the use and enjoyment of her property as a result of Defendants' actions and inactions.

141.    After having a reasonable opportunity to do so, Defendants failed to take reasonable measures to properly abate the contamination described herein. In the alternative Defendants are unable to reasonably abate the contamination and resulting diminution of value of Plaintiffs' property.

142.    As a direct and proximate cause, Defendants' acts and omissions have caused substantial actual damage and immediate and ongoing diminution of the

1  value of Plaintiffs' real property and the property of the Class and/or have caused

2  substantial permanent diminution of value of Plaintiffs' property.

3       143.   As a result, Plaintiffs have and will continue to suffer damages, both

4  economic and otherwise.

5       144.   The contamination described herein constitutes a nuisance within the

6  meaning of Section 3479 of California Civil Code.

7       145.   Plaintiffs are informed and believe, and on that basis allege, that the

8  contamination is continuing and abatable and/or the contamination and/or

9  diminution in value of Plaintiffs property is permanent and not reasonably abatable.

10      146.   As a proximate result of the nuisance, Plaintiffs have and will suffer

11  damages of a continuing and/or permanent nature.

12                          **Ninth Claim for Relief**
                            **Nuisance Per Se**
13

14      147.   Plaintiffs who have a real property interest in water front property

15  bring this claim on behalf of themselves and all other similarly situated land owners

16  or lessees.  They incorporate by reference each and every prior and subsequent

17  allegation of this Complaint as if fully restated here.

18      148.   The contamination constitutes a nuisance within the meaning of

19  Section 3479 of California Civil Code.

20      149.   Plaintiffs are in the class of persons protected under these statutes

21  from Defendants and their violations thereof due to the fact that Defendants have, at

22  all times relevant, owned, operated, maintained, supervised and/or controlled the

23  Pipeline.

24      150.   Defendants violated California Civil Code section 3479 by their

25  failure to properly abate the contamination, and by allowing contamination to

26  continue to spread.

27      151.   As a proximate result of the nuisance, Plaintiffs have and will suffer

28  damages of a continuing and/or permanent nature.

CLASS ACTION COMPLAINT

**Tenth Claim for Relief**
**Permanent Injunction**

152.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

153.    Beginning on or about October 2, 2021, and continuing to the present time, Defendants, and each of them, wrongfully and unlawfully caused oil to spill onto surrounding areas, into the Pacific Ocean, and onto coastal real properties.

154.    In the absence of an injunction, Defendants will continue to violate the rights of Plaintiff and the Class.  Defendants, and each of them, have refused and still refuse to refrain from their wrongful conduct.

155.    Defendants' wrongful conduct, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to Plaintiff and the Class.

156.    Plaintiff and the Class have no adequate remedy at law for the injuries that will result from failure of the Defendants to safely replace and/or repair, operate, and maintain their pipeline and it could be impossible for Plaintiff and the Class to determine the precise amount of damages they will suffer if Defendants' conduct is not restrained and Plaintiff is forced to institute a multiplicity of suits to obtain adequate compensation for injuries and harm to the Class.

## IX.    REQUEST FOR RELIEF

Plaintiffs, individually and on behalf of all others similarly situated, request judgment against Defendants as follows:

A.    For an order certifying the Class and appointing Plaintiffs as representatives of the Class and appointing the lawyers and law firm representing Plaintiffs as counsel for the Class;

B.    For an order permanently enjoining Defendants from operating the Pipeline without adequate safety and response measures and ongoing monitoring;

CLASS ACTION COMPLAINT

1      C.     For all recoverable compensatory, statutory, and other damages

2  sustained by Plaintiffs and the Class, including all relief allowed under applicable

3  laws;

4      D.     For costs;

5      E.     For both pre-judgment and post-judgment interest on any amounts

6  awarded;

7      F.     For appropriate injunctive relief, including public injunctive relief; *i.e.*,

8  an order requiring Defendants to do the following:  require Defendants to restore

9  property values impacted by the spill; repair reputational damage done to

10  oceanfront and beachfront real property along California's Southern Coast; and an

11  order requiring Defendants to operate the Pipeline in such a way to ensure no

12  further spills and resulting losses of jobs;

13      G.     For treble damages insofar as they are allowed by applicable laws;

14      H.     For appropriate individual relief as requested above;

15      I.     For payment of attorneys' fees and expert fees as may be allowable

16  under applicable law, including Cal. Gov. Code section 8670.56.5(f) the Private

17  Attorneys General Act ("PAGA"), Cal. Lab. Code. § 2698, et seq.;

18      J.     For exemplary or punitive damages under Cal. Civ. Code Section 3294

19  for the oppression, fraud, and malice alleged above; and

20      K.     For such other and further relief, including declaratory relief, as the

21  Court may deem just and proper.

22             **X.   DEMAND FOR JURY TRIAL**

23      Plaintiffs hereby demand a trial by jury on all issues so triable.

24  ///

25  ///

26  ///

27  ///

28

                    CLASS ACTION COMPLAINT

1   Dated: October 6, 2021                  Respectfully submitted,

2                                           CAPPELLO & NOËL LLP

3
                                            By:  _/s/ A. Barry Cappello_
4                                                   A. Barry Cappello

5                                           A. Barry Cappello (CSB No. 037835)
                                            Leila J. Noël (CSB No. 114307)
6                                           Lawrence J. Conlan (CSB No. 221350)
                                            CAPPELLO & NOËL LLP
7                                           831 State Street
                                            Santa Barbara, CA 93101-3227
8                                           Telephone:  (805)564-2444
                                            Facsimile:   (805)965-5950
9
                                            *Attorneys for Plaintiffs*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT